

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

In re

PROFESSIONAL BUSINESS PLANNING & RESEARCH, INC.

Debtor.

Case No.   SA 04-10201 TA

Chapter   11

**MEMORANDUM RE MOTION FOR RELIEF FROM THE AUTOMATIC STAY**

At the Court's request, both sides submitted supplemental briefs explaining their respective positions regarding the motion of creditors David Okun, et al (collectively "Okun") for relief of stay to proceed as judgment creditors to foreclose by sheriff's sale the judgment entered October 25, 2004 in Orange County Superior Court case no. 0CC15461 ("the Judgment"). The Judgment was for the original amount of $6,239,876 but has reportedly increased to well over $8,000,000 with interest, costs and fees. The Court found the supplemental briefs helpful in sorting out the convoluted facts of this case, and in better understanding the respective arguments.

1

The Judgment was entered jointly and severally against numerous defendants including the debtor, Rodney Miles ("Miles"),[1] Victorian Inn Partnership ("Victorian") and several other entities which apparently were either at one time owned or controlled by Miles. Victorian is a partnership owned by at least three partners, the debtor, David B. Okun M.D. F.A.C.P., a medical corporation ("Okun Medical") and Rodney C. Miles, Inc. retirement trust. The Judgment was recorded with county records and appears of record against certain undeveloped real property commonly known as 1 South Ocean Ave., Cayucos, California, ("the property") which is now owned of record by judgment debtor Victorian. A quiet title action was brought by Okun and a judgment was entered therein May 1, 2006 in case no. 04CC00586 ("quiet title") establishing that the property is indeed owned by Victorian. This is true notwithstanding that debtor's name appeared originally on title as one of its three partners who, apparently, held title as tenants in common as agents *on behalf of Victorian*. Moreover, in the quiet title it is established that there is a senior secured interest of Estate Financial to secure the sum of $400,000, plus accruing interest. Estate Financial had apparently in good faith paid off other liens and so, in effect, became subrogated to those positions. The quiet title further provides that the purported interest of Cayhot, Inc. (apparently a transferee of the property from Miles) was expunged.

Although the background is convoluted, the principle upon which the case ultimately turns is relatively clear. A partnership is recognized as a separate entity. Except in unusual circumstances, the automatic stay *does not extend to protect the*

---

[1] Rodney Miles is also a debtor in the Court, case no. 04-10085TA

*property of non-debtors.* Therefore, since the property is owned by Victorian[2], the automatic stay simply does not apply. It is unavailing to argue that the foreclosure, because it indirectly *affects* the value of the debtor's partnership interest in Victorian, is stayed. See e.g. *In re Palumbo*, 154 B.R. 357, 358 (Bankr. S.D. Fla. 1992); *In the matter of Minton Group, Inc.*, 46 B.R. 222, 224 (Bankr. S.D.NY 1985); *In re Hudgins*, 153 B.R. 441, 444 (Bankr. E.D. Va. 1993).

Apparently, though, the Trustee is urging a different or alternative theory. The Trustee argues that this is one of those "unusual circumstances" where courts have found that the automatic stay can be extended beyond actions against property of the estate or the debtor to stay the actions against non debtor third parties to further fundamental goals of the Bankruptcy Code. In *A.H. Robins Co., Inc. v. Piccinin*, 788 F. 2d 994 (4th Cir. 1986) cert den. 479 U.S. 876 (1986) actions against third party co-defendants arising out of the Dalkon Shield litigation were held to be stayed because of the absolute rights of indemnity back against debtor. The *A.H Robins* court held that there was an "identity of interest" between the debtor and the third party defendants. Among other theories advanced was the existence of diminishing insurance policies which would be exhausted if the bankruptcy court did not control and consolidate the litigation. On those admittedly "unusual circumstances" the *A.H. Robins* court extended the stay by issuance of injunctive relief. Id. at 1001  Of similar import is another of the Trustee's cited cases, *In re Family Health Services, Inc.*, 105 B.R. 937 (Bankr. C.D.Ca. 1989) where Judge Wilson as part of the Maxicare cases extended the stay by injunction

---

[2] The Trustee is apparently not contending that because record title was originally held by the three partners as tenants in common as agents for Victorian, before the quiet title, somehow there is a residual interest in title of the estate.

to prevent third party providers from suing members of the HMO for unpaid services because of the flood of indemnification claims that would result. Id. at 942-43. Another case cited by the Trustee, which is really based on a different principle, is *Matter of S.I. Acquisition*, 817 F. 2d 1142 (5th Cir. 1987) wherein the court determined that under Texas law the right to proceed against a principal of the debtor corporation under alter ego theories was in fact a right of the corporation itself, and was thus "property of the estate". Id. at 1152-53 Lastly, there is *In re Bialac*, 712 F. 2d 426 (1983) which holds that the right to redeem from a foreclosure the rights of co-tenants in a promissory note under Arizona law was an asset of the estate which was protected by the stay. Therefore, a foreclosure sale of the five sixths interest held by the co-owners violated the stay because it destroyed the redemption rights. Id. at 428-29.

Although these authorities could be cited for the proposition that the stay can be extended to non debtors in "unusual circumstances," the Trustee's attempt to relate those authorities to the facts of this case is not persuasive. Moreover, the Court believes it is unwise to attempt too much extension of these doctrines and the Court joins with the sentiment repeated in all of the opinions that the extension of the stay beyond the debtor and property of the estate is only warranted in "unusual circumstances." It is the Court's view that the Trustee's cited authorities are wholly distinguishable, and *A.H. Robins* and *Family Health* are really injunction cases. In *A.H. Robins*, *Family Health* and similar cases, the bankruptcy court was struggling to control cascading litigation which would have swamped the debtor's ability to formulate a plan through a flood of indemnity claims or because, in *Family Health*, such claims would destroy the fragile "going concern" value which was the principal asset of the estate. *S.I Acquisition*, in contrast, is really a case

4

that decides that under Texas law alter ego litigation against the corporation's own principals is an asset of the estate, and therefore fits within standard parameters of §362(a)(3) protection. Similarly, *Bialac* fits within the standard analysis because under the unique provisions of Arizona law, there existed a redemption right which was extinguished by the foreclosure sale against the non-debtors. But in both *S.I Acquisition* and *Bialac*, those were unique statutory rights owned directly by the debtor which were destroyed by the creditors' actions. The Trustee's argument for a more generalized application is not persuasive.

The facts here are fundamentally different. First, this is not a mass tort or contract litigation case so many of those factors which made those cases "unusual circumstances" in *A.H. Robins* and *Family Health* are not present. From what this Court can see, this case is also not a reorganization case but only about liquidation of whatever remaining assets there are in the case. Second, although the Trustee argues that foreclosure of the judgment lien will fix the indemnity claims (presumably) of the other partners in Victorian, or perhaps Victorian itself, he never articulates why this much matters[3]. Presumably, the Okun Medical indemnity claim as a co partner is no more an issue than the commensurate claim of Okun as a judgment creditor. The indemnity claim of Miles or his retirement plan, whether as co partner in Victorian or as joint and several judgment debtor may be subordinated anyway. In any event, it is not at all apparent why this should present any compelling reason to extend the stay to non debtors. Nor does the

---

[3] The Trustee at p. 2 of his Supplemntal Brief also raises an argument about joint and several liability of all of the several judgment debtors, and argues that there might be contribution or indemnity claims as between the judgment debtors. But other than a vague assertion that this makes ours closer to the mass litigation cases, he never articulates why this joint and several status should extend the stay to Victorian's property or why such claims do not already exist and/or, even if they exist, why the fixing of amount is not inevitable anyway.

Trustee identify how any of the fundamental purposes of the Code would be furthered by an extension of the stay, unlike *A.H. Robins* or *Family Health*.

Moreover, under more traditional analysis of §362(d)(1) and (d)(2), the Court cannot see where there is much of an asset to protect here. There is clearly at least $400,000 to Estate Financial owed ahead of any interest that the debtor has in Victorian even in the most favorable circumstances, which amount is also likely to start accruing interest in the near future. The only evidence of the property's value suggests that it is about $1,000,000. Whatever "equity" could be realized would have to be split three ways even assuming *arguendo* that the Okun Judgment lien could be ignored. If the Okun Judgment is not ignored (and the Trustee has yet given no persuasive reason why it should be), apparently the property is "upside down" by a factor of at least 800%. Even if the Court would lend some credence to the argument for an eventual offset for damages, the offset number would have to be at least $8,000,000 plus before the estate gets "in the money" in practical terms. Moreover, even if offset were eventually ordered against Okun this Court cannot hold this secured creditor hostage indefinitely on the vague speculation that there might be offsets, particularly since this case has now been in Chapter 11 for some two years and six months. Besides, no showing is made as to why such damages, if awarded, are not fully collectible quite aside from the property. Nor is the Court persuaded by some of the other arguments of the Trustee. The Trustee argues that there might be adverse tax consequences from a sheriff's sale. Even if that were so the remedy is more appropriately abandonment. Moreover, theoretically adverse consequence to the estate cannot indefinitely balance the real adverse consequence of delay imposed on creditors. The Trustee argues that a sheriff's sale is not the best

method of obtaining value from the property. While that may be true the real question is whether the estate has any right to demand further delay in the vague hope that something better can be gotten. Not one word was offered about how the Trustee proposes to compensate Okun in adequate protection for the further delay, nor how there is any "reorganization in prospect"[4] in this case that might provide the second element found at §362(d)(2)(B), as is the Trustee's burden. The Trustee's supplemental brief contains a vague argument that the Judgment lien is somehow a preference, but the recording was actually *post* petition (and therefore outside the purview of preference scrutiny) and, since the property is not/was not property of the estate or property of the debtor, the recording of a lien thereon cannot have been an avoidable "transfer" within the meaning of §547.

Lastly, and in some ways most importantly, this is not a new case. The case has been pending now for two years and almost 6 months, much of that time under the direction of the Trustee. While it might have been interesting to debate about the vitality of some of these issues earlier on, we are now at a point where creditors and the Court can and should expect a "fish or cut bait" approach from the Trustee. Continued delay comes at a cost, and on these facts it is one that can no longer be borne by the creditor without more persuasive grounds than what has been offered herein.

The motion is granted.

DATED: JUN 19 2006

HONORABLE THEODOR C. ALBERT
United States Bankruptcy Judge

---

[4] See *United Savings* v. *Timbers of Inwood Forest*, 484 U.S. 365, 108 S. Ct. 626 (1988).

NOTICE OF ENTRY OF JUDGMENT OR ORDER

AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST LISTED BELOW:

You are hereby notified that a judgment or order entitled: MEMORANDUM RE MOTION FOR RELIEF FROM THE AUTOMATIC STAY was entered on __JUN 2 0 2006__.

I hereby certify that I mailed a true copy of the order or judgment to the persons and entities listed below on __JUN 2 0 2006__.

Christopher C. Lewi
Booth, Mitchel & Strange, LLP
707 Wilshire Blvd., #4450
Los Angeles, CA 90017

T. Edward Malpass, Esq
Law Offices of T. Edward Malpass
16148 Sand Canyon Avenue
Irvine, CA 92618

Professional Business Planning, Inc.
PO Box 6905
Laguna Niguel, CA 92607

Nick O'Malley
1505 E. 17th Street, Suite 108
Santa Ana, CA 92705

John M. Wolfe
5450 Trabuco Road
Irvine, CA 92620

DATED  JUN 2 0 2006

By _____
Clerk